IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KAY ANN WOOTEN, et al.,          §
                                 §
                    Plaintiffs,  §
                                 §   Civil Action No. 3:04-CV-1196-D
VS.                              §
                                 §
FEDERAL EXPRESS CORPORATION,     §
                                 §
                    Defendant.   §

MEMORANDUM OPINION
 AND ORDER 

In this action by an interracial married couple alleging claims for race discrimination and retaliation, their former employer moves for summary judgment. For the reasons that follow, the court grants the motion in part and denies it in part.

I

Plaintiffs Kay Ann Wooten ("Katie") and Ronnie Lemuel Wooten ("Ronnie"),[1] who are married, are former employees of defendant Federal Express Corporation ("FedEx"). They sue FedEx alleging claims for disparate treatment race discrimination, retaliation, and hostile work environment under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Labor Code Ann. §§ 21.001-21.556 (Vernon 2006). Plaintiffs also assert a pendent state-law claim for intentional infliction of emotional distress.

_____

[1] According to plaintiffs' first amended original complaint and summary judgment brief, Kay goes by the nickname "Katie."

Katie is Caucasian and Ronnie is African-American.  Both began their careers at FedEx as part-time couriers and eventually obtained full-time positions as Ramp Transport Drivers ("RTDs") at the Dallas-Fort Worth Ramp Transport Station ("DFW RT").[2]  RTDs transport unloaded freight from the ramp stations, where freight has arrived via aircraft, to ground stations for sorting and final delivery.  At some point during their tenure, they began working together and started dating.  Plaintiffs allege that they were the target of unwelcome comments, innuendo, and "open hostility" in the workplace as early as November 1999.  FedEx terminated their employment in February 2004.

In February 2001 plaintiffs accepted "job share" RTD positions at FedEx.  Job share positions are in some ways less desirable than non-job share positions,[3] and plaintiffs aver that FedEx thwarted their subsequent attempts to obtain more desirable non-job share positions.  FedEx twice denied Katie a promotion (once in 2001 and again in 2002) to available "swing" driver positions because

_____

[2]The court recounts the evidence in a light favorable to plaintiffs as the summary judgment nonmovants and draws all reasonable inferences in their favor.  *E.g., U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.) (citing *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000)).

[3]"Job share" positions involve two jobs that are combined, [P. Resp. 11, ¶ 74] thus requiring plaintiffs to work at the DFW RT Station as truck drivers for part of the day, take a two-to-three hour break, and then travel at their own expense to the Addison Station, where they would work as station couriers for the remainder of the day.

——contrary to "station practice"——FedEx permitted more senior employees from outside Katie's workgroup to bid on the positions. Plaintiffs assert that FedEx selected employees who were not known to be involved in interracial relationships.

FedEx also denied plaintiffs promotions to full-time RTD positions in August 2001,[4] ostensibly because of minimum time commitment clauses contained in their job share employment offer letters.   According to plaintiffs, these restrictions were a pretext for discrimination, because FedEx relaxed similar restrictions for other employees who were not known to be involved in interracial relationships.   Plaintiffs also allege that after they obtained full-time RTD positions in March 2003, FedEx wrongfully limited their work schedules to 40 hours per week.

Plaintiffs assert that they were subjected to a racially hostile work environment.   Within months of their marriage, Katie became the target of harassment at work.   They maintain that Tony Garrett ("Garrett"), Katie's Freight Coordinator, began harassing her in 2001 and continued doing so "through 2004" by giving her onerous assignments, including requiring her to deliver packages in other drivers' areas, making inappropriate comments about her relationship with Ronnie, and loading her freight backwards.   After

---

[4]Plaintiffs also allege that they were denied promotions to full-time, "RTD/Shuttle" positions, the creation of which Katie had proposed to management.   They do not, however, mention this second alleged denial of promotions in their response brief.

Katie complained in September 2001 of Garrett's harassment, manager Mark Brendstrup ("Brendstrup") monitored Garrett to ensure that Katie's freight was loaded correctly.  Garrett was not disciplined, however, for his conduct.

In February 2003 plaintiffs met with Harrison Hoof ("Hoof"), a FedEx Senior Manager.  Katie complained about workplace harassment stemming from her involvement in an interracial relationship[5] with Ronnie.  Plaintiffs assert that Hoof became "visibly angry" in response to these allegations.  FedEx managers Sue Walsh ("Walsh") and Vicki Peyton ("Peyton") were present at the meeting, but they failed to offer plaintiffs an "EEO packet" or to report Katie's complaint to the Human Resources Department.  Additionally, upon learning of Katie's complaint, FedEx employees Greg Arbet ("Arbet") and Garrett cursed at plaintiffs and once became physically violent with Ronnie in Brendstrup's presence.  Katie's vehicle was "sabotaged," and FedEx driver Reginald Terry ("Terry") threw Katie's personal belongings to the ground and told her, using profane language, to stay out of his truck, despite the fact that Katie had been assigned the truck for the day.  Katie asserts that she complained to management about the harassment, but no action was taken.  She was given documented counseling for

---

[5]Throughout this opinion the court uses the term interracial "relationship" because the parties have done so.  The court recognizes, of course, that this "relationship" is primarily plaintiffs' marriage.

allegedly calling Garrett "a snake."

Plaintiffs maintain that Ronnie was given contradictory instructions from managers Walsh and Peyton, and was then disciplined and criticized for performance failures. They aver that Walsh told Ronnie he was not ever required to pick up freight at other stations, but Peyton required Ronnie to do so late in the evening. Ronnie also alleges that when he called Peyton to ask her about schedule changes, she told him never to question her decisions and yelled at him for calling her at home, despite the fact that Peyton had previously circulated a memo directing drivers to call managers at home if they had any scheduling problems. Ronnie reported Peyton's allegedly harassing behavior to District Manager Glen Corbin ("Corbin"), but Ronnie received documented counseling as a result. Plaintiffs allege that, shortly thereafter, Terry cursed at Ronnie, Ronnie complained to Walsh, but no disciplinary action was taken. Ronnie then met with Peyton, Hoof, and Walsh concerning Peyton's harassing behavior, which included making repeated changes to Ronnie's schedule, in violation of FedEx policy.

Plaintiffs maintain that Peyton then attempted to get Ronnie fired by asking other employees to make false statements, including that Ronnie had been physically violent. Ronnie complained to Ed Harvey ("Harvey"), a Human Resources representative, and took stress leave in July 2003. Ronnie filed a FedEx EEO complaint

against Peyton that same month, and he discussed the matter with
another FedEx Human Resources representative, Ann Richardson
("Richardson"), who said she would investigate his claim.
Plaintiffs assert that Richardson never spoke with any of Ronnie's
witnesses.

Plaintiffs allege that, after Ronnie complained of harassment,
FedEx targeted him for disciplinary action.  Walsh gave him a
Performance Reminder letter, purportedly for mis-delivering a U.S.
Airways package, but there are no documents that indicate that
Ronnie ever possessed a U.S. Airways package on the day of the
alleged mis-delivery.  Other FedEx employees who were not involved
in interracial relationships, and who had not filed EEO complaints,
regularly mis-delivered packages without receiving Performance
Reminder letters.  FedEx continued to document Ronnie for purported
performance deficiencies, while other employees at the DFW RT
station were not similarly disciplined.

In December 2003 FedEx terminated Ronnie based on his
receiving three disciplinary letters, but he had in fact only
received two.  After he appealed under the FedEx Guaranteed Fair
Treatment Process ("GFTP"), FedEx temporarily reinstated him
pending an investigation, in accordance with FedEx policy.  FedEx
conducted a three-week investigation of Ronnie and Katie's conduct,
and in February 2004 both were terminated.  FedEx found that they
had driven more than five miles outside their delivery areas for

breaks, falsified their time cards for hours worked, and falsified their delivery records.  Plaintiffs contend that these reasons were pretexts for discrimination, because other employees who engaged in the same or similar conduct, but who were not involved in interracial relationships, were not disciplined or discharged. They also allege that management intentionally set them up for termination by giving them fewer total stops, and more stops near their home, thus encouraging them to go home for lunch.

FedEx moves for summary judgment dismissing all of plaintiffs' claims.[6]  Plaintiffs oppose the motion.[7]

_____

[6]FedEx also moves to strike parts of plaintiffs' evidence. The court denies the motion *infra* at § XI.

[7]The court originally referred this motion to the magistrate judge for recommendation.  Review of the magistrate judge's findings and recommendation on a summary judgment motion is *de novo*.  *See* 28 U.S.C. § 636(b)(1)(B); *Abbeville Gen. Hosp. v. Ramsey*, 3 F.3d 797, 801 (5th Cir. 1993) (addressing circuit court review of district court summary judgment ruling).  The court therefore decides the motion anew, as if the motion had not been referred for recommendation in the first place. *See Mills v. Davis Oil Co.*, 11 F.3d 1298, 1300 (5th Cir. 1994) (addressing appellate standard) ("The standard of review at the appellate level of a district court's grant of summary judgment requires the same analysis as employed by the trial court.").  Accordingly, although the court often agrees after *de novo* review with all or substantial parts of magistrate judge recommendations regarding summary judgment motions, in this case the court concludes that the summary judgment motion should be analyzed afresh.  The court therefore will not discuss the magistrate judge's July 20, 2006 findings and recommendation or the parties' briefing regarding defendant's objections thereto.  Instead, the court will decide the motion on the original briefing, as if it had never been referred.  In doing so, the court adopts as its own the magistrate judge's January 30, 2006 order striking defendant's January 13, 2006 supplemental appendix and denying as moot plaintiffs' motion for leave to file a surreply and supplemental evidentiary appendix.  The court would

II

Before turning to the merits, the court addresses a procedural issue that arises from the parties' method of briefing the motion.

Defendant filed this motion on November 29, 2005, and briefing concluded on January 13, 2006. The magistrate judge filed his findings and recommendation on July 20, 2006, and the court is deciding the motion today. Part of the delay in deciding the motion is attributable to how the parties have briefed it. Defendant's brief begins with just over 48 pages of 273 separately numbered "undisputed material facts." *See* D. Br. 1-48. Plaintiffs' brief begins with nearly 50 pages of 362 separately numbered "genuine issues of material facts." *See* Ps. Br. 1-50. The briefs of both sides are generally inadequate in connecting these voluminous pages of so-called undisputed/genuinely disputed facts to the parties' legal arguments.

Since this court amended its local summary judgment rules in 1998, the court has regularly pointed out the defects in this method of briefing summary judgment motions. For example, in *Bowe v. Exide Corp.*, 2001 WL 705881 (N.D. Tex. June 19, 2001) (Fitzwater, J.), the court quoted from an earlier decision in *James v. City of Forney,* No. 3:99-CV-0354-D (N.D. Tex. Feb. 14, 2001) (Fitzwater, J.), which was addressed to a defective brief submitted by the summary judgment movants:

---

have entered the same order.

In their brief, defendants set out 17 pages of
numerically listed contentions of fact and
law. This effort appears to be a throwback to
former N.D. Tex. Civ. R. 56.1, which stated:
"A motion for summary judgment must list in
numerical order: (1) the undisputed facts upon
which the motion relies; and (2) the issues of
law." Rule 56.1 was simply a restatement of
Local Rule 5.2(a) (repealed 1997), which had
long imposed the same requirement. In 1998,
however, this court extensively revised its
summary judgment local rules. One revision
eliminated the requirement that a summary
judgment movant list in numerical order the
undisputed facts and the issues of law. The
reason for abrogating the Rule is aptly
illustrated in the present case. Defendants'
multi-page list of contested facts and law,
set out separately from their substantive
arguments, provides the court little
assistance in deciding defendants' motion.
The list itself does not make clear why the
contentions are substantively significant.
And defendants' citations to specific factual
and legal contentions require the court to
move back and forth through the brief to link
them up rather than allow the court to
consider the contentions within the confines
of the relevant arguments. With the advent of
the 1998 summary judgment local rules, a brief
in support of a motion for summary judgment
should look more like an appellate brief, with
assertions about the evidence and law set out
under an argument heading that states clearly
and with particularity why summary judgment is
warranted on the basis asserted.

*Id.* at *2 (some citations omitted) (quoting *James*, No. 3:99-CV-

0354-D, at 3 n.5). The court also addressed in *Bowe* the

nonmovant's defective response brief:

[W]hat the court said in *James* is worth
repeating in the context of a summary judgment
opposition brief, since it bears significantly
on the court's ability to decide summary
judgment motions with dispatch: "With the

- 9 -

> advent of the 1998 summary judgment local
> rules, a brief in [opposition to] a motion for
> summary judgment should look more like an
> appellate brief, with assertions about the
> evidence and law set out under an argument
> heading that states clearly and with
> particularity why summary judgment is [not]
> warranted on the basis asserted."

*Id.* (brackets in original) (citation omitted).

In the present case, the court has had to engage in considerable flipping back and forth between voluminous pages of so-called undisputed/genuinely disputed facts and legal arguments to understand why the listed facts are substantively significant and to determine whether they support a party's assertion concerning the summary judgment record. The court has found it necesary to "move back and forth through the brief[s] to link them up rather than . . . to consider the contentions within the confines of the relevant arguments." *Id.* To avoid additional delay that would result by requiring re-briefing, the court has undertaken this task in this case. But given the passage of time since this court adopted improved summary judgment rules in 1998, this court may show less tolerance for such briefing deficiencies in future cases.

III

A

FedEx contends that it is entitled to summary judgment dismissing some of plaintiffs' Title VII claims as barred by limitations. It points out that plaintiffs filed their charges of

- 10 -

discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 5, 2004, and it maintains that they cannot recover for any discrete incidents that occurred before May 10, 2003. FedEx posits that only plaintiffs' discriminatory termination claim, and the suspension component of Ronnie's discriminatory discipline claim,[8] occurred after May 10, 2003.[9]

---

[8]In FedEx's briefing, the discriminatory *discipline* claim is also referred to as a discriminatory *suspension* claim. For clarity, unless the context requires otherwise, the court will refer to it as a discriminatory discipline claim because the parties use the term "discipline" in the captions of their respective arguments.

After reviewing plaintiffs' summary judgment response brief, the court concludes that their Title VII/§ 1981 discipline claim relates only to discipline taken against Ronnie, and it pertains to his one-week suspension and to his receipt of Performance Reminders that led to his termination. The court holds that the discipline claim consists of a suspension component, which FedEx does not challenge as untimely, and a component that essentially merges with plaintiffs' claim of discriminatory termination, which FedEx likewise does not contend is time-barred. Accordingly, the court need not decide whether there are other components of plaintiffs' Title VII-based discriminatory discipline claim that are barred by limitations.

[9]FedEx states that plaintiffs' "§ 1981 race discrimination claims are timely as to any discrete events that occurred before June 3, 2000." D. Br. 52. FedEx appears to assume that a four-year limitations period applies, because June 3, 2000 precedes by four years the date plaintiffs filed this suit: June 3, 2004. (FedEx also appears to use the word "timely" when it means "untimely.") Because Texas is the forum state for this suit, however, the court concludes that a two-year limitations period applies to plaintiffs' § 1981 claims.

Because § 1981 does not contain a statute of limitations, courts use the most analogous statute of limitations of the forum state. *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987); *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 n.22 (5th Cir. 1994). The most analogous state statute of limitations is the one for personal injury tort actions. *Goodman*, 482 U.S. at 661-62. Therefore, the

Plaintiffs offer the conclusory response that, under a continuing violation theory, none of their Title VII claims is time-barred. They appear to maintain that, because in August 2002 Katie complained to her manager, Brendstrup, of disparate treatment due to her and Ronnie's interracial relationship, conduct that precedes May 10, 2003 is not barred by limitations.

FedEx replies that the continuing violation doctrine does not apply to any Title VII claims based on discrete acts that occurred outside the statutory period.

B

Plaintiffs base their Title VII claim on acts that occurred both before and after May 10, 2003.

> In deferral states such as Texas, an aggrieved party must file her EEOC charge within 300 days after the alleged unlawful practice occurred. The 300-day filing period is not jurisdictional, but rather is more akin to and operates as a limitations period. The period commences on the date the alleged unlawful practice occurred.

*Stith v. Perot Sys. Corp.*, 2004 WL 690884, at *3 (N.D. Tex. Mar. 12, 2004) (Fitzwater, J.) (footnote and citations omitted), *aff'd*, 122 Fed. Appx. 115 (5th Cir. 2005) (unpublished opinion).

The "continuing violation" doctrine is an "equitable exception to the statutory period." *Davis v. Metwest*, 1999 WL 102814, at *2

---

court applies Texas's general personal injury limitations period of two years. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (Vernon 2005).

- 12 -

(N.D. Tex. Feb. 24, 1999) (Fitzwater, J.) (citing *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 474 (5th Cir. 1989)).  "Although there is no definitive standard for what constitutes a continuing violation, the plaintiff seeking to invoke this doctrine must demonstrate more than a series of discrete discriminatory acts[.]"  *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 352 (5th Cir. 2001).  "'He must show an organized scheme leading to and including a present violation, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action.'"  *Id.* (quoting *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998)).  "[A] one-time employment event, including the failure to hire, promote, or train and dism[iss]als or demotions is 'the sort of discrete and salient event that should put the employee on notice that a cause of action has accrued.'"  *Id.* (quoting *Huckabay*, 142 F.3d at 240).  "'[D]iscrete adverse actions, although racially motivated, cannot be lumped together with the day-to-day pattern of racial harassment' and therefore, if otherwise untimely, cannot be saved by the continuing violation doctrine."  *Id.* (quoting *Huckabay*, 142 F.3d at 240).

Apart from Title VII-based discriminatory termination claim and the discriminatory discipline (suspension) claim——which FedEx concedes are timely——plaintiffs allege claims for failure to

promote, hostile work environment, and retaliation.[10]  Plaintiffs'
discriminatory failure to promote claims are based on discrete
events that occurred outside the 300-day statutory window and are
therefore time-barred.  Plaintiffs allege that FedEx failed to
promote them in 2001 and 2002.  "An employer's failure to promote
an employee is a discrete event that 'cannot constitute a
continuing violation under prevailing precedent.'" *Blackman v. City
of Dallas,* 2006 WL 1816390, *6 (N.D. Tex. 2006) (Sanders, J.)
(quoting *Blackman v. City of Dallas*, 2001 WL 182752, *2 (N.D. Tex.
2001) (Solis, J.), *aff'd*, 33 Fed. Appx. 704 (5th Cir. 2002)
(unpublished opinion)).  Plaintiffs cannot recover under Title VII
based on FedEx's failure to promote them, because these claims are
time-barred.

The court need not address whether plaintiffs' hostile work
environment claims are timely under Title VII.  Assuming *arguendo*
that they are, for the reasons explained *infra* at § IX, the court
holds that the claims fail on the merits.

---

[10]Because plaintiffs include a disparate pay claim in their
first amended original complaint, FedEx addresses the claim in its
summary judgment motion.  Plaintiffs have not, however, responded
to this part of FedEx's motion, and it appears they do not intend
to prosecute a pay-based claim.  To the extent they do, FedEx is
entitled to summary judgment dismissing it.  Although plaintiffs'
failure to respond does not permit the court to enter a "default"
summary judgment in favor of FedEx, *see, e.g.*, *Tutton v. Garland
Independent School District*, 733 F. Supp. 1113, 1117 (N.D. Tex.
1990) (Fitzwater, J.), plaintiffs have failed to adduce evidence
that would permit a reasonable trier of fact to find in their
favor.  Accordingly, the court will not address further in this
opinion a pay-based discrimination claim.

Nor need the court decide whether Katie's Title VII retaliation claim is time-barred, because it holds *infra* at § IV(B) that she did not exhaust it.  As to Ronnie's Title VII-based retaliation claim, the court holds that all the bases for this claim that survive summary judgment*, see infra* at § VIII, either occurred after May 10, 2003 or there is a genuine issue of material fact whether the retaliatory conduct (i.e., Peyton's actions following the February 2003 meeting) continued past May 10, 2003. The court thus denies FedEx's motion to the extent it seeks dismissal of Ronnie's Title VII-based retaliation claim as time-barred.

IV

FedEx maintains that some of Katie's Title VII claims and both plaintiffs' THRCA claims have not been exhausted and are therefore barred.  Apart from the Title VII-based discriminatory termination and discipline claims, which are not now at issue, plaintiffs respond that they can recover based on FedEx's failing to promote them, subjecting them to a hostile work environment, and retaliating against them.  The court will address FedEx's exhaustion arguments in the context of these three claims.

A

The court initially examines FedEx's argument concerning Title VII.  FedEx contends that because Katie's EEOC charge only alleges discriminatory termination, she is precluded from bringing any

- 15 -

other claim under Title VII. Plaintiffs respond by relying on the irrelevant assertions that they advised FedEx of their concerns about harassment and disparate treatment by making verbal complaints, requesting meetings with FedEx management, filing harassment charges, sending emails and letters, providing statements, appealing through the GFTP, and filing internal FedEx EEO complaints. These arguments are inapposite, of course, because "the purpose of a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). Private complaints made to FedEx do not trigger the investigatory and conciliatory procedures *of the EEOC*.

Plaintiffs also argue that they filed two EEOC charges and that FedEx's reliance on the absence of checkmarks for "retaliation" on their EEOC charges is specious, and they cite their attempt——which the EEOC rejected as untimely[11]——to amend their EEOC charges to include retaliation claims. Plaintiffs maintain that a Title VII claim can encompass any matter that would reasonably arise out of an investigation of their "amended" charge, and that FedEx was on notice that they contended they were being retaliated against for complaining of discrimination. FedEx replies that notice of claims must be given in the EEOC charge and

_____

[11]The EEOC declined to accept plaintiffs' retaliation amendments because they were offered after the EEOC's final determination in the case on March 5, 2004.

- 16 -

that any workplace conduct that occurred before the charge cannot

be sufficient notice and is irrelevant.

B

> The scope of the exhaustion requirement has
> been defined in light of two competing Title
> VII policies that it furthers.  On the one
> hand, because the provisions of Title VII were
> not designed for the sophisticated, and
> because most complaints are initiated pro se,
> the scope of an EEOC complaint should be
> construed liberally.  On the other hand, a
> primary purpose of Title VII is to trigger the
> investigatory and conciliatory procedures of
> the EEOC, in attempt to achieve non-judicial
> resolution of employment discrimination
> claims.  Indeed, a less exacting rule would
> also circumvent the statutory scheme, since
> Title VII clearly contemplates that no issue
> will be the subject of a civil action until
> the EEOC has first had the opportunity to
> attempt to obtain voluntary compliance.  With
> that balance in mind, this court interprets
> what is properly embraced in review of a
> Title-VII claim somewhat broadly, not solely
> by the scope of the administrative charge
> itself, but by the scope of the EEOC
> investigation which can reasonably be expected
> to grow out of the charge of discrimination.
> We engage in fact-intensive analysis of the
> statement given by the plaintiff in the
> administrative charge, and look slightly
> beyond its four corners, to its substance
> rather than its label.

*Pacheco v. Mineta*, 448 F.3d 783, 788-89 (5th Cir. 2006) (citations,

internal quotation marks, brackets, and emphasis omitted).  "The

lawsuit that follows is limited in scope to the EEOC investigation

that could reasonably be expected to grow out of the charge of

discrimination.  In other words, the complaint may encompass any

kind of discrimination 'like or related to' allegations contained

in the EEOC charge." *Hayes v. MBNA Tech., Inc.*, 2004 WL 1283965, at *6 (N.D. Tex. June 9, 2004) (Fitzwater, J.) (citations omitted).

As explained above, although Katie's Title VII-based failure to promote claim is time-barred, it is also precluded because she did not exhaust it. Katie's complaint alleges that she was discriminated against based on race when she was discharged on February 27, 2004. She complains only about being falsely accused of driving more than five miles from her delivery area, falsifying her timecard, and falsifying delivery records. There is no complaint about a failure to promote her. Giving the EEOC complaint a liberal construction, interpreting it somewhat broadly according to the scope of the EEOC investigation that could reasonably be expected to grow out of the charge of discrimination, and considering its substance rather than its label, the court holds that the EEOC investigation that could reasonably be expected to grow out of the charge of discrimination would not include a claim of failure to promote. *See, e.g., Page v. Howard Indus., Inc.*, 2006 WL 3511454, at *3 (S.D. Miss. Dec. 5, 2006) (holding that plaintiff's failure to promote allegations were not contained within EEOC Charge, that only allegation related to discriminatory discharge, and that even giving EEOC charge a liberal construction, court could not say that EEOC investigation of failure to promote could reasonably be expected to grow out of charge of unlawful termination, which was entirely different allegation based on

entirely different set of facts); *Burton v. Madix Store Fixtures*, 2006 WL 247897, at *1 (N.D. Tex. Feb. 1, 2006) (Lindsay, J.) (adopting magistrate judge recommendation that, *inter alia*, Title VII plaintiff failed to exhaust administrative remedies regarding failure to promote claim where there were no allegations in EEOC charge regarding failure to promote).

The court need not decide whether Katie's hostile work environment claim is properly exhausted in view of its holding *infra* at § IX that the claim fails on the merits. If the court were to address exhaustion in this context, however, it would conclude that Katie failed to exhaust her hostile work environment claim. Katie's EEOC charge does not mention that she was subjected to a hostile work environment or allege any facts that, liberally construed, could reasonably be expected to lead to the investigation of such a claim. *See, e.g., Hayes*, 2004 WL 1283965, at *7 (holding that EEOC charge that complained of denial of promotions, unequal pay, and race discrimination did not exhaust hostile work environment claim, that passages on which plaintiff relied were not like or related to claim of racially hostile work environment, and that EEOC investigation of such claim could not reasonably be expected to grow out of the charge).

Finally, the court holds that Katie did not exhaust her retaliation claim. The EEOC rejected plaintiffs' attempts to amend

their charges.[12]  Katie's charge complains only of discrimination
based on her termination.  She did not check the retaliation box on
her charge and did not complain of retaliation in her EEOC charge.
Although plaintiffs correctly discount the mere failure to check
the retaliation box, *see Pacheco*, 448 F.3d at 792 ("To be clear, we
do not require that a Title-VII plaintiff check a certain box or
recite a specific incantation to exhaust his or her administrative
remedies before the proper agency."), they fail to establish that
the charge itself or other materials timely and properly presented
to the EEOC show that Katie exhausted her retaliation claim.  She
therefore failed to exhaust this claim.  *See, e.g., Hayes*, 2004 WL
1283965, at *8 (holding that plaintiff did not exhaust retaliation
claim where she did not check retaliation box on EEOC charge and
did not mention word retaliation or explicitly assert
retaliatory-type conduct in attachment to EEOC questionnaire);
*Perez v. MCI World Com Commc'ns*, 154 F.Supp.2d 932, 938 (N.D. Tex.
2001) (Buchmeyer, J.) ("Plaintiff did not check the 'retaliation'
box on the Charge, nor did she include any statements [in her
charge or questionnaire] regarding retaliation.  Therefore,

_____

[12]Plaintiffs' request to amend their EEOC charge is not the
functional equivalent of an affidavit or response to an EEOC
questionnaire that could be sufficient to exhaust a claim that is
not set out in the EEOC charge itself.  This is because the EEOC
rejected plaintiffs' attempt to amend as untimely and therefore did
not consider the amendment.  In the case of an affidavit or
response to an EEOC questionnaire, these documents are properly
before the EEOC and thus part of the conciliation process.

Plaintiff failed to exhaust her administrative remedies for the claim of retaliation . . . ."). And because she complains of retaliatory acts that preceded the filing of her EEOC charge, she does not fall within the exception that applies when a person complains of retaliation for filing the EEOC charge itself. *See Hayes*, 2004 WL 1283965, at *9. "Where the alleged retaliation occurs before the initial EEOC charge is filed, a plaintiff must exhaust his administrative remedies on that claim." *McCray v. DPC Indus., Inc.*, 942 F. Supp. 288, 295 (E.D. Tex. 1996).

Accordingly, the court holds that Katie exhausted her Title VII-based termination claim[13] but not her promotion, hostile work environment, or retaliation claim, and these components of her Title VII action are dismissed.

C

FedEx maintains that the court lacks subject jurisdiction over both plaintiffs' TCHRA claims because they failed to exhaust their administrative remedies.[14] Plaintiffs have not responded to this

---

[13]The discipline claim is based on conduct directed at Ronnie.

[14]As part of its argument, FedEx contends that plaintiffs cannot recover under the TCHRA because they did not receive a THCRA right-to-sue letter. The court understands this assertion to be offered as a component of the contention that plaintiffs did not exhaust their administrative remedies rather than as the basis for this assertion. Texas courts hold that it is the entitlement to a right-to-sue letter rather than the receipt of the letter that exhausts the complainant's administrative remedies. *See, e.g., Rice v. Russell-Stanley, L.P.*, 131 S.W.3d 510, 513 (Tex. App. 2004, pet. denied). Plaintiffs' failure to receive a right-to-sue letter is insufficient of itself to warrant dismissing their THCRA-based

ground of FedEx's motion, and the court grants summary judgment dismissing plaintiffs' TCHRA-based claims.[15]

"The THCRA requires the exhaustion of state remedies as a jurisdictional prerequisite." *Jones v. Grinnell Corp.*, 235 F.3d 972, 974 (5th Cir. 2001) (citing *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 485 (Tex. 1991)). "If a complainant fails to exhaust his state administrative remedies, the Texas Human Rights Act jurisdictionally bars this court from hearing the case regardless of equitable and policy concerns." *Id.* (citing *Zevator v. Methodist Hosp. of Houston*, 1995 WL 500637, at *2 (S.D. Tex. Mar. 30, 1995); *Ridgway's Inc. v. Payne*, 853 S.W.2d 659, 663 (Tex. App. 1993, no writ)).

"In order to comply with this exhaustion requirement, an employee must: (1) file a complaint with the TCHR within 180 days of the alleged discriminatory act; (2) allow the TCHR to dismiss the complaint or resolve the complaint within 180 days before

---

claims. Nevertheless, for reasons the court explains, FedEx correctly maintains that plaintiffs failed to exhaust their administrative remedies. Moreover, even if the court were to hold that FedEx failed to shift the burden, it would still raise the issue *sua sponte* because it pertains to the court's subject matter jurisdiction. *See, e.g., Hayes*, 2004 WL 1283965, at *2 ("[T]his court is obligated, *sua sponte* if necessary, to note a lack of subject matter jurisdiction . . . .") (citing *In re Bowman*, 821 F.2d 245, 246 (5th Cir. 1987)).

[15]In its reply brief, FedEx asserts that plaintiffs have failed to establish that they requested a right-to-sue letter from the TCHR. Assuming *arguendo* that the argument was properly raised, the court need not consider it.

filing suit; and (3) file suit no later than two years after the complaint is filed." *Wiltshire v. Humpal Physical Therapy, P.C.*, 2005 WL 2091092, at *2 (Tex. App. Aug. 31, 2005, no pet.) (unpublished opinion); *City of Houston v. Fletcher*, 63 S.W.3d 920, 922 (Tex. App. 2002, no pet.).  A complaint filed with the EEOC, and forwarded by the EEOC to the TCHR, satisfies the requirements of the TCHRA.  *Price v. Philadelphia Am. Life Ins. Co.*, 934 S.W.2d 771, 773-74 (Tex. App. 1996, no writ).  "[E]xhaustion occurs when the complainant files a timely charge with the commission and waits 181 days to file suit."  *City of Houston*, 63 S.W.3d at 922.

In this case, plaintiffs filed their EEOC charges on March 5, 2004.  They filed this lawsuit on June 3, 2004.  They did not wait 181 days before filing suit.  They thus failed to exhaust their administrative remedies under the TCHRA, and their claims are dismissed without prejudice for lack of subject matter jurisdiction.[16]

V

FedEx moves for summary judgment dismissing plaintiffs' termination claims under Title VII and § 1981.[17]

---

[16]Although exhaustion can occur before the expiration of the 180-day period if the charge is dismissed, *see* Tex. Lab. Code. Ann. § 21.208, plaintiffs have not responded to this ground of FedEx's motion and have thus failed to adduce evidence that the TCHR in fact dismissed their charges before they filed suit.

[17]Because the court has dismissed plaintiffs' TCHRA-based claims, the termination claim is necessarily based on Title VII and § 1981.

- 23 -

A

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's race."  42 U.S.C. § 2000e-2(a)(1).  Section 1981 guarantees "[a]ll persons within the jurisdiction of the United States . . . the same right . . . to make and enforce contracts" regardless of race.  42 U.S.C. § 1981(a).  "Claims of racial discrimination brought under § 1981 are governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII."  *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n.2 (5th Cir. 1996).

Because FedEx will not have the burden of proof at trial on plaintiffs' claims, it can meet its summary judgment obligation by pointing the court to the absence of evidence to support them.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once it does so, plaintiffs must then go beyond their pleadings and designate specific facts showing there is a genuine issue for trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is mandatory if plaintiffs fail to meet this burden.  *Little,* 37 F.3d at 1076.

In the context of a Title VII/§ 1981 race discrimination

claim, each plaintiff must present sufficient direct or circumstantial evidence that would permit a reasonable trier of fact to find that his or her race was a motivating factor in the decision to discharge him or her. *See, e.g., Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 652 (5th Cir. 2004) (addressing Title VII claims for race, color, religion, sex, or national origin discrimination). "'Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption.'" *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3. (5th Cir. 2003) (Fitzwater, J.) (age discrimination case) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)). A plaintiff who offers "sufficient direct evidence of intentional discrimination should prevail, just as in any other case where a plaintiff meets his burden." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 40 (5th Cir. 1996) (citing *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328 n.6 (5th Cir. 1994)). Because, as the court explains below, plaintiffs have not adduced direct proof of race discrimination, they must rely on circumstantial evidence.

If direct evidence is unavailable, plaintiffs can prove discrimination using the "modified *McDonnell Douglas* approach." *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (age discrimination case). As modified, *McDonnell Douglas* consists of three stages. First, plaintiffs must establish a prima facie

case of discrimination, which "creates a presumption that [FedEx] unlawfully discriminated against [them]." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden then shifts to FedEx to articulate a legitimate, nondiscriminatory reason for discharging them. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). FedEx's burden is one of production, not proof, and involves no credibility assessments. *See, e.g., West*, 330 F.3d at 385. Finally, if FedEx meets its production burden, then plaintiffs may proceed under one of two alternatives: the pretext alternative or the mixed-motives alternative. *See Rachid*, 376 F.3d at 312. Under the pretext alternative, plaintiffs must "offer sufficient evidence to create a genuine issue of material fact . . . that [FedEx's] reason is not true, but is instead a pretext for discrimination." *Id.* (internal quotations omitted). Under the mixed-motives alternative, plaintiffs must offer sufficient evidence to create a genuine issue of material fact "that [FedEx's] reason, while true, is only one of the reasons for its conduct, and another motivating factor is [plaintiffs'] protected characteristic[.]" *Id.* (internal quotations omitted).

B

To establish a prima facie case of discriminatory discharge under Title VII and § 1981, plaintiffs must show that they (1) are members of a protected class, (2) were qualified for the position, (3) were subject to an adverse employment action, and (4) were

- 26 -

replaced by someone outside the protected class, or, in the case of disparate treatment, show that other similarly situated employees were treated more favorably. *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004) (addressing discharge-based § 1981 claims); *see also Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005). FedEx contends that plaintiffs have not met their obligation of establishing a prima facie case of discriminatory termination because they cannot show that members of other groups received more favorable treatment, that is, that any similarly situated employee was treated differently. Specifically, FedEx posits that plaintiffs cannot identify any other RTD employee who engaged in nearly identical misconduct and was not discharged. FedEx refers to "all three instances of misconduct" without further specification, and it characterizes the misconduct as plaintiffs' effort "to systematically eat lunch at home for extended periods on almost a daily basis." D. Br. 54. The court assumes that FedEx is referring to the Management Rationales for terminating plaintiffs' employment: (1) falsification of time cards, (2) driving more than five miles from the last delivery area for a break, (3) and logging deliveries while at home instead of at the point of delivery. FedEx argues that although plaintiffs may be able to identify RTDs who committed one of these violations——falsified a time card, falsified a delivery record, or went home for lunch——they cannot name a single RTD who consistently violated each policy merely to

stay at home for an extended lunch break, most of which was on the clock.

FedEx contends in the alternative that, even if the court assumes that plaintiffs have established a prima facie case, FedEx has articulated a legitimate, nondiscriminatory reason for terminating their employment——the three-prong rationale on which it relied to discharge them——and plaintiffs cannot present substantial evidence of pretext or establish that their involvement in an interracial relationship was a factor that motivated FedEx to terminate their employment.

Plaintiffs respond that a reasonable jury could find that the alleged misconduct on which FedEx relies was commonplace and accepted or disregarded; that FedEx management could not define the parameters of plaintiffs' (or perhaps any) delivery areas and that plaintiffs consequently did not travel outside their areas; that FedEx has offered inconsistent explanations for concluding that plaintiffs had violated company policy by being out of their areas, or explanations that a jury could find were false; that FedEx has since changed its policy concerning whether deliberate falsification of documents is a dischargeable offense; that FedEx's response (a full-blown investigation rather than informal corrective action) reflects discriminatory animus; and that at least four employees——Greg Behm ("Behm"), Ricky Busch ("Busch"), Arbet, and Lorna Williamson ("Williamson")——have engaged in the

same three instances of conduct.   In sum, plaintiffs argue that FedEx selectively enforced certain policies against them.   They cite examples of FedEx RTD drivers who each allegedly engaged in misconduct that is the same or similar to plaintiffs', but who were not discharged as a result.

FedEx replies that plaintiffs have not identified a single "nearly identical" comparator, because they have not named one RTD who consistently violated each policy merely to stay home for an extended lunch break, most of which was on the clock.

C

The court decides first whether plaintiffs have met their burden of demonstrating a prima facie case.   To "establish a *prima facie* case, a plaintiff need only make a very minimal showing." *Nichols,* 81 F.3d at 41 (quoting *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 622, 639 (5th Cir. 1985)).   Moreover, "a plaintiff may make [the prima facie] showing by demonstrating either that he was replaced by someone outside the protected class or that other similarly situated employees outside the protected class were treated more favorably." *Wheeler*, 415 F.3d at 405 (citing *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001)).

The "similarly situated" requirement has been strictly interpreted to mean "nearly identical." *E.g. Ryburn v. Potter*, 155 Fed. Appx. 102, 107 (5th Cir. 2005) (per curiam) (unpublished

opinion) (quoting *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 304 (5th Cir. 2000)); *Torrez v. Milk Products L.P.*, 402 F.Supp.2d 773, 778 (W.D. Tex. 2005).   Therefore, to establish a prima facie case, a Title VII/§ 1981 plaintiff must show that others who engaged in "nearly identical" misconduct were not discharged.[18]   *See, e.g., Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991); *Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990) (quoting *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. 1982)).

The court holds that plaintiffs have established a prima facie case of discriminatory termination.   FedEx maintains that the only relevant comparator for determining "nearly identical" misconduct is an RTD who consistently violated each policy merely to stay at home for an extended lunch break, most of which was on the clock. The Management Rationale for Ronnie's termination describes seven

---

[18]FedEx essentially treats this as a work-rule violation case on the basis that it discharged plaintiffs for violating FedEx policies.   "In work-rule violation cases, a Title VII plaintiff may establish a prima facie case by showing 'either that he did not violate the rule or that, if he did, white employees who engaged in similar acts were not punished similarly.'" *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) (quoting *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980) (per curiam)).   Plaintiffs contend, *inter alia*, that similarly situated employees who were not known to be engaged in interracial relationships were treated more favorably.   This showing, if supported by the evidence, is sufficient under the work-rule paradigm and under the fourth element of the disparate treatment formulation, which permits the alternative showing that similarly-situated employees of a different race were treated more favorably.

instances of time card falsification, seven instances of driving more than five miles outside his delivery area, and at least one instance of scanning a delivery at home instead of at the point of delivery.   Similarly, the Management Rationale for Katie's termination describes eight instances of time card falsification, five instances of driving more than five miles outside her delivery area, and at least one instance of scanning a delivery while at home instead of at the point of delivery.   The Management Rationales do not rely on the premise that plaintiffs engaged in misconduct in order "to systematically eat lunch at home for extended periods on an almost daily basis."   In other words, the evidence does not show that FedEx relied on the fact that plaintiffs were going home or eating lunch as a reason to terminate their employment.

Plaintiffs respond by adducing evidence that FedEx RTD employees Behm, Arbet, and Williamson engaged in all three types of purported misconduct, but they were not consequently discharged. They cite multiple instances in which these employees scanned deliveries at a location other than at the point of delivery, took breaks more than five miles from the point of their last delivery, and falsified time cards.   Plaintiffs also adduce evidence that none of these employees was terminated for such conduct.   Finally, plaintiffs appear to posit that FedEx's rationale for their termination is "false" because, *inter alia*, the purported

misconduct in which plaintiffs are alleged to have engaged was in fact "common practice" at the DFW RT station.

A reasonable trier of fact could find on the basis of the foregoing that plaintiffs were discharged for engaging in nearly identical misconduct as did Behm, Arbet, and Williamson, who were not discharged. As noted, FedEx attempts to distinguish plaintiffs' misconduct from that of Behm, Arbet, and Williamson on the basis that plaintiffs engaged in such misconduct for the purpose or goal of systematically taking an extended lunch on an almost daily basis. But this was not part of the stated Management Rationale for discharging plaintiffs, and FedEx has not shown why this distinction is material in resolving the question whether nearly identical employees were treated differently. Because establishing a prima facie case is not onerous, and viewing the evidence favorably to plaintiffs, the court holds that they have met their burden of establishing a prima facie case of discriminatory termination.

D

Because plaintiffs have met their burden of establishing a prima facie case, FedEx is obligated to produce evidence that it had a legitimate, nondiscriminatory reason for terminating plaintiffs' employment. *See Jackson v. Federal Exp. Corp.*, 2006 WL 680471, at *5 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.) (citing *St. Mary's Honor Ctr.,* 509 U.S. at 506-07). FedEx relies on evidence

- 32 -

that plaintiffs violated the company's Acceptable Conduct Policy by falsifying company documents and driving more than five miles outside their delivery areas.  Misconduct of this type constitutes a legitimate, nondiscriminatory reason for terminating someone's employment.  *See, e.g., Moore v. Eli Lilly & Co.*, 990 F.2d 812, 816 (5th Cir. 1993) (holding that company's belief that salesman had falsified drug sample records was "undeniably a legitimate, non-discriminatory reason for its termination of [his] employment"); *Mendez v. Dollar Tree Stores, Inc.*, 114 Fed. Appx. 149 (5th Cir. Nov. 22, 2004) (per curiam) (unpublished opinion) (holding that continuing violations of company policy was legitimate, nondiscriminatory reason for terminating employment).

E

Because FedEx has met its burden of production, plaintiffs are obligated to adduce evidence that would permit a reasonable jury to find that FedEx's reasons for discharging them are a pretext, or to show that their race was a factor that motivated the decision to terminate them.

Plaintiffs appear to rely on the pretext alternative.  Under this approach, they may satisfy their burden by showing "that the legitimate reasons offered by [FedEx] were not its true reasons, but were a pretext for discrimination."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Burdine*, 450 U.S. at 253).  That is, they must produce sufficient evidence

- 33 -

for a reasonable jury to find either that FedEx's proffered explanation is unworthy of credence or that a discriminatory reason more likely motivated FedEx's decision to terminate them. *See Burdine*, 450 U.S. at 256. "[T]he trier of fact may still consider the evidence establishing the plaintiff[s'] prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'" *Reeves*, 530 U.S. at 143 (quoting *Burdine*, 450 U.S. at 255 n.10).

Plaintiffs assert that FedEx's "business justification is false," and they adduce evidence that, *inter alia*, the alleged misconduct for which they were discharged was in fact "common practice" at FedEx, and that other employees engaged in nearly identical misconduct but were not disciplined or terminated as a result. Plaintiffs also adduce evidence from which a reasonable jury could find that FedEx's proffered explanation is unworthy of credence because time card falsification was not listed as a "discharge offense" at the time of plaintiffs' termination; that FedEx at one point actually encouraged its employees to engage in the "creative scanning" of packages at places other than the point of delivery, and it may have failed to inform employees adequately of the change in that policy; and that FedEx contrived the purported policy against drivers' going on break more than five miles from their last delivery.

A reasonable jury could find based on this evidence that

FedEx's proffered explanation for terminating plaintiffs is
unworthy of credence and thus a pretext for discrimination.

> [T]he factfinder's disbelief of the reasons
> put forward by the defendant (particularly if
> disbelief is accompanied by a suspicion of
> mendacity) may, together with the elements of
> the prima facie case, suffice to show
> intentional discrimination.   Thus, rejection
> of the defendant's proffered reasons will
> *permit* the trier of fact to infer the ultimate
> fact of intentional discrimination, and . . .
> [n]o additional proof of discrimination is
> *required*.

*St. Mary's Honor Ctr.*, 509 U.S. at 511.   The court accordingly
denies FedEx's motion for summary judgment on plaintiffs'
discriminatory termination claim under Title VII and § 1981.

VI

FedEx maintains that plaintiffs cannot recover on the basis of
an allegedly discriminatory failure to promote them.   Because
plaintiffs' Title VII-based promotion claims are time-barred,
plaintiffs did not exhaust their TCHRA-based claims, and Katie did
not exhaust her Title VII-based failure to promote claim, these
claims are limited to § 1981.[19]

Plaintiffs allege that each was denied a promotion to the

---

[19]Although the court has held that Katie did not exhaust her
failure to promote claim and that both plaintiffs' Title VII
failure to promote claims are time-barred, § 1981 does not contain
an exhaustion requirement, *see, e.g., Alpha Portland Cement Co. v.
Reese*, 507 F.2d 607, 608-09 (5th Cir. 1975), and FedEx does not
move for summary judgment dismissing plaintiffs' § 1981 claims
based on the limitations.

position of full-time, non-job share RTD.[20]   The first denial
occurred in 2001, when both Ronnie and Katie bid on the same
position.   Katie was denied for a second time in 2002.

A

The court raises *sua sponte* that FedEx is entitled to
dismissal of plaintiffs' 2001-based promotion claims because the
limitations period for their § 1981-based claims expired two years
later, in 2003, *see supra* at note 9, before plaintiffs filed suit
in 2004.[21]   Accordingly, the court gives plaintiffs 20 days from the
date of this memorandum opinion and order to file a brief in which
they state any basis on which they rely to contend that their 2001-
based failure to promote claims are not time-barred.   They are not
required to file such a brief if they cannot demonstrate a viable
basis to avoid limitations.   After considering their response brief
(or their decision not to file one), the court will either dismiss
this component of their claims or invite FedEx to file a reply.

---

[20]The parties dispute whether the jobs plaintiffs sought in
2001 and 2002 qualified as "promotions" or were instead "lateral
transfers."   The court uses the term "promotion" because it rejects
FedEx's contention that a move to a non-job share position is a
"lateral transfer."

[21]*See, e.g., Jackson*, 2006 WL 680471, at *9 (holding that court
is permitted to raise summary judgment *sua sponte*, provided it
provides nonmovants notice and a fair opportunity to file an
opposition response).

B

The court now considers whether FedEx is entitled to summary judgment dismissing Katie's claim based on her failure to receive a promotion in 2002.[22]

1

Although FedEx does not clearly differentiate how its arguments apply to each plaintiff or to the 2001 and 2002 promotion claims, it appears to rely on the following grounds to support dismissal of Katie's claim: she cannot establish that she was qualified for the position because she was subject to a February 2001 job offer letter that stated that she could not apply for shift bids for 12 months; she is relying on the denial of a lateral transfer, not the denial of a promotion, which does not qualify as an adverse employment action; and she cannot show that others who were similarly situated were moved into the position she sought, i.e., the person who obtained the position in 2002——Lester Newkirk ("Newkirk")——had more CEV points.  FedEx also contends that, even if Katie can establish a prima facie case, it has produced evidence of a legitimate, nondiscriminatory reason for offering the positions to Newkirk——restrictions on Katie's ability to bid for

---

[22]The court is unable to discern from the record the exact date of the 2002 denial, but the record suggests that the second position for which Katie bid became available in August 2002.  This suggests that the 2002-based claim is timely under § 1981.

the position and Newkirk's CEV points[23]——and Katie cannot show pretext or racial motivation for FedEx's decision because she would have to show that she was clearly better qualified.

Plaintiffs respond that the change from a job share position to a non-job share position is not merely a lateral transfer and that they have established a genuine issue of material fact regarding whether Newkirk was qualified to compete for the position because he came from outside the work group.

2

FedEx's first two grounds for obtaining summary judgment lack force.  Assuming that FedEx even intends that its argument concerning the job offer letter apply to the 2002 promotion, *see* D. Reply Br. 9 (stating that "[a]t the time the *first* non-job share full-time RTD positions became available for which both Plaintiffs applied, twelve months had not yet passed" (emphasis added)), a reasonable jury could find that 12 months had elapsed before Katie bid for the promotion in 2002.  According to FedEx, the position became available in August 2002.  The time commitment in Katie's February 2001 offer letter expired before August 2002.

And FedEx's argument that Katie is seeking a "lateral transfer" that does not qualify as adverse employment action fails because FedEx is relying on Title VII *retaliation* cases to support

_____

[23]"CEV points are a composite score based on an employee's continuous service with FedEx and [his] performance review scores." D. Br. 24.

this contention, not *discrimination* cases.[24]

                                    3

     FedEx's third argument addresses whether plaintiffs can show
that FedEx's legitimate, nondiscriminatory reason for giving the
job to Newkirk (i.e., that he had move CEV points) is pretextual.
Plaintiffs respond that Katie was better qualified because she came
from within the work group and Newkirk did not.   FedEx counters
that its written policy at the time permitted all employees under
the same Senior Manager to bid for an open position.

     The court concludes that there is a genuine issue of material
fact whether FedEx policy permitted someone outside the work group
to compete for the position.   If the competitors were limited to
those within the work group, then Newkirk's superior CEV point
total would not have made him more qualified for the position.
Accordingly, although there is evidence in the record that would
permit the jury to find that Newkirk was from the geographical area
(i.e., working under the same Senior Manager) that made him
eligible to bid on the new position, the court must deny summary
judgment as to Katie's 2002-based failure to promote claim under
§ 1981.

_____

     [24]Moreover, the retaliation cases are now subject to
reexamination in light of a recent Supreme Court decision.   *See*
*infra* at § VIII(B).

VII

Plaintiffs allege that FedEx violated Title VII and § 1981 by suspending Ronnie for one week based on his race.[25]   This is essentially a component of the termination claim, which perhaps explains why plaintiffs do not address it specifically in their summary judgment response brief.   Although plaintiffs' failure to respond to FedEx's motion insofar as it pertains to Ronnie's one-week suspension claim does not entitle the court to enter a "default" summary judgment, the court is permitted to accept FedEx's evidence as true and undisputed.   *See, e.g.*, *Tutton v. Garland Indep. Sch. Dist.*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.).   Accordingly, the court dismisses plaintiffs' suspension-based claim under Title VII and § 1981.

VIII

FedEx moves for summary judgment dismissing plaintiffs' retaliation claims.   Because Katie did not exhaust this claim under Title VII or the TCHRA, her claim is brought only under § 1981.   Ronnie's claim is based on Title VII and § 1981, although the analysis of each is essentially the same.

---

[25]As the court explains *supra* at note 8, to the extent plaintiffs rely on Ronnie's receipt of Performance Reminders, it appears to be for the purpose of establishing that FedEx terminated his employment based on race.   Accordingly, the court addresses only the question whether FedEx is entitled to summary judgment dismissing plaintiffs' claim based on Ronnie's suspension.

A

FedEx posits that plaintiffs allege the same acts in support of their retaliation claims as they do for their disparate treatment claims, and that neither plaintiff can establish that there is a similarly situated employee who was treated differently. FedEx also contends that plaintiffs cannot show that they engaged in a protected activity until at least February or March 2003, when Katie asked Hoof whether they were being denied non-job share full-time positions because they were in an interracial relationship. It posits that, before they were discharged, plaintiffs did not complain to any manager or Human Resources representative that they believed that any action was due to their being in an interracial relationship.  FedEx thus contends that plaintiffs cannot establish a prima facie case of retaliation.  Alternatively, it argues that plaintiffs cannot show that the legitimate, nondiscriminatory reasons it has adduced for plaintiffs' termination were a pretext for retaliation.

Plaintiffs respond that there is a suspicious temporal proximity between the following protected activities and adverse employment actions: (1) plaintiffs' raising concerns in February 2003 of discrimination based on their interracial status and Hoof's outburst at them and their managers (Peyton and Walsh), and

Peyton's persecution of Ronnie[26]; (2) the filing of Ronnie's July 28, 2003 EEO complaint against Peyton and his subsequent termination on December 16, 2003;(3) Katie's complaints regarding fear for her job and her concern about being considered "a mouth," and her termination two months later; (4) and Ronnie's reinstatement on January 7, 2004, for which Lee Roberts ("Roberts") was chastised, and Roberts's decision five weeks later to engage in a three-week long full-blown investigation of plaintiffs. Plaintiffs posit that Roberts's behavior is particularly suspect because the conduct for which plaintiffs were investigated was widely known and accepted by management as commonplace, and FedEx did not follow the progressive disciplinary policy in their case.

B

The court analyzes plaintiffs' retaliation claim under the familiar burden-shifting paradigm. Plaintiffs must first establish a prima facie case of retaliation. To do so, they must demonstrate that (1) they engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse employment action. *Walker v. Norris Cylinder Co.,* 2005 WL 2278080, at *9 (N.D. Tex. Sept. 19,

---

[26]Although in their brief plaintiffs refer to Peyton's alleged persecution of both Ronnie and Katie, *see* Ps. Br. 66, earlier in the brief, *see id.* at 18-23, they cite only evidence to support the premise that Peyton harassed Ronnie and that he complained about her harassment. The court thus treats this argument as if limited to Ronnie.

2005) (Fitzwater, J.) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)).  "[T]iming can sometimes be a relevant factor in determining whether a causal connection exists where the timing between a protected activity and an adverse employment action is 'suspicious[ly]' proximate."  *See Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 418 n.9 (5th Cir. 2003) (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir.1999)).

If plaintiffs establish a prima facie case, the burden then shifts to FedEx to articulate a legitimate, nondiscriminatory reason for the alleged retaliatory action taken.  FedEx's burden is one of production, not of proof.

If FedEx meets its production burden, plaintiffs must adduce evidence that would permit a reasonable trier of fact to find that the adverse employment action would not have occurred but for the protected conduct.  *See Walker*, 2005 WL 2278080, at *9.[27]  "At the

---

[27]"After the employer has produced evidence to rebut the employee's prima facie case of retaliation, the showing that the plaintiff must make to establish causation is more onerous than that initially required to present a *prima facie* case."  *Id.* (citing *Phillips v. Credit Lyonnais,* 2002 WL 1575412, at *8 (N.D. Tex. July 16, 2002) (Fish, J.) (citing *Sherrod v. American Airlines*, 132 F.3d 1112, 1122 n.8 (5th Cir. 1998)); *Long*, 88 F.3d at 305 n.4).  "Although the court may consider proximity in time as a factor supporting causation, proximity alone is a slender reed on which to avoid summary judgment."  *Id.* (citing *Underwood v. E. Tex. Univ.*, 1998 WL 204624, at *7 (N.D. Tex. Apr. 15, 1998) (Fish, J.), *aff'd*, 182 F.3d 915 (5th Cir. 1999) (unpublished table decision)); *id.* (citing *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1092 (5th Cir. 1995) (affirming summary judgment for employer despite employee's claim that causation was shown by proximity in time between protected activity and adverse employment action); *Shirley v. Chrysler First*, *Inc.*, 970 F.2d 39, 44 (5th Cir. 1992)

summary judgment stage, the nonmovant need only point to the existence of a genuine issue of material fact." *Id.* (quoting *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002)). "The ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but for' cause of the adverse employment decision." *Id.* (quoting *Long*, 88 F.3d at 305 n.4).

"Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating*." Newman v. Coll. of Mainland,* 2006 WL 3391445, at *5 (S.D. Tex. Nov. 21, 2006). "The Supreme Court has recently broadened the meaning of actionable adverse employment action for the purposes of Title VII retaliation claims." *Rodriguez v. Gonzalez*, 2006 WL 2844185, at *4 (S.D. Tex. Oct. 2, 2006) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, ___ U.S. ___, 126 S.Ct. 2405 (2006)).

> In [*Burlington*] the Court rejected the "ultimate employment decision" standard—an exclusive list of actions such as hiring, [g]ranting leave, discharging, promoting and compensating. The Court instead adopted the broader "material adverse standard"—meaning an action which might dissuade a reasonable worker from making a charge of discrimination or sexual harassment. The Fifth Circuit has not had occasion to address whether this new broader standard of adverse employment action in Title VII retaliation claims will also apply to § 1983 retaliation claims.

---

("Consideration of such dates is part of our analysis, but not in itself conclusive of our determinations of retaliation.")).

- 44 -

*Id.* (citations omitted).   Nor has the Fifth Circuit as yet explicitly applied *Burlington* to a § 1981-based retaliation claim. Because such claims are generally analyzed under the same framework as are Title VII claims, and because § 1981 does not contain the language that prompted the Fifth Circuit to give the Title VII anti-retaliation clause a narrower reading in the first place, the court will apply *Burlington*'s more expansive standard.   The court will deem to be an adverse employment action for purposes of § 1981-based retaliation any action that a reasonable employee would have found to be materially adverse, that is, one that might have dissuaded a reasonable worker from making or supporting a charge of discrimination.   *Burlington*, 126 S.Ct. at 2415.

C

Plaintiffs maintain first that there is a suspicious proximity between their raising concerns in February 2003 of discrimination due to their interracial relationship and Hoof's "outburst" at them and their managers that immediately followed, and Peyton's subsequent persecution of Ronnie.   Raising concerns of discrimination with management is protected activity, and an inference of retaliatory motive is permitted based on the close temporal proximity between these events.   But even under *Burlington*, a reasonable jury could not find that Hoof's single outburst during the meeting, in which he allegedly "jumped up and began ranting and raving and yelling 'how dare you?'" is sufficient

of itself to constitute an adverse employment action.    In other words, a reasonable jury could not find that a reasonable employee would have found that Hoof's isolated response, unaccompanied by more concrete consequences, might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

Plaintiffs have, however, established a prima facie case based on Peyton's alleged persecution of Ronnie shortly after the February meeting.  Under *Burlington*, such conduct——i.e., changing his schedule, making false accusations against him, treating him with hostility, and giving him additional assignments that were not included in his original offer letter——could in combination constitute an adverse employment action because it might reasonably be found to dissuade a reasonable worker from making or supporting a charge of discrimination.    Accordingly, the court holds that plaintiffs have established a prima facie case of retaliation based on Peyton's actions toward Ronnie.[28]

Because plaintiffs have met their burden of establishing a prima facie case of retaliation on this ground, the burden shifts to FedEx to articulate a legitimate, nondiscriminatory reason for Peyton's conduct.  FedEx has not articulated any reason, much less

---

[28]This conclusion is not inconsistent with the court's holding below, *see infra* at § IX(C), that plaintiffs have failed to adduce evidence that would permit a reasonable jury to find that Peyton's actions toward Ronnie subjected him to a racially hostile environment.  Conduct that is race neutral and thus inadequate to constitute a racially hostile work environment can still qualify as retaliatory conduct that the law forbids.

a legitimate, nondiscriminatory one, for Peyton's behavior.
Accordingly, FedEx is not entitled to summary judgment dismissing
plaintiffs' retaliation claim based on Peyton's alleged persecution
of Ronnie following the February 2003 meeting.

D

Plaintiffs next posit that there is a suspicious temporal
proximity between the filing of Ronnie's July 28, 2003 EEO
complaint against Peyton and his subsequent termination on December
16, 2003.  The filing of an EEO complaint is a protected activity,
and termination is an adverse employment action.  Moreover, an
inference of a causal connection can reasonably be drawn based on
the temporal proximity between the filing of the EEO complaint in
July and Ronnie's subsequent termination in December.  In this
circuit, "[t]ime lapses of up to six months have been held
sufficient to establish the causal connection prong of a prima
facie retaliation case." *Phillips v. Credit Lyonnais,* 2002 WL
1575412, at *8 n.4 (N.D. Tex. July 16, 2002) (Fish, J.) (citing
*Dennison v.. AT & T Corp.*, 1998 WL 873032, at *1 n.1, *2, *4 (N.D.
Tex. Dec. 3, 1998) (Buchmeyer, J.), *aff'd*, 189 F.3d 469 (5th Cir.
1999) (unpublished table decision)).  Accordingly, the court holds
that plaintiffs have established a prima facie case of retaliation
on this basis.

Because plaintiffs have established a prima facie case, the
burden shifts to FedEx to produce evidence of a legitimate,

- 47 -

nondiscriminatory reason for terminating Ronnie's employment.   To meet its burden of production, FedEx appears to rely solely on the reasons already described *supra* at § V(D).   For the reasons the court has already described, *see supra* at § V(E), the court holds that plaintiffs have demonstrated the existence of a genuine issue of material fact as to whether these reasons were unworthy of credence and thus pretextual.   Accordingly, the court denies FedEx's motion for summary judgment to the extent it is addressed to this component of plaintiffs' retaliation claim.

E

Plaintiffs also contend that there is a suspicious temporal proximity between Katie's complaints regarding fear for her job and her concern about being considered "a mouth," and her termination two months later.   They cite summary judgment evidence that, after Peyton began changing Katie's schedule in December 2003, Katie complained to Roberts of harassment and requested an open door meeting.   On December 17, 2003, the day after Ronnie was fired, Katie and Roberts met.   Plaintiffs allege that, instead of addressing her concerns, Roberts told her that he had heard she "had a mouth" and that he did not like "nit picking."   Katie complained to Roberts that she was concerned about Peyton's harassment, was in fear of losing her job, and that her husband had been fired the day before.

Katie's complaints to Roberts are a protected activity, and

her termination is an adverse employment action.  Plaintiffs have established a prima facie case of retaliation.

FedEx appears to rely on the same reasons described *supra* at § V(D) to meet its burden of production concerning Katie's termination.  For the reasons the court explains *supra* at § V(E), it concludes that plaintiffs have demonstrated the existence of a genuine issue of material fact as to whether FedEx's reasons are pretextual.  Accordingly, the court denies FedEx's motion for summary judgment as to this element of Katie's retaliation claim. Because it relates to Katie, the claim is limited to one brought under § 1981.

F

Finally, plaintiffs argue that there is a suspicious temporal nexus between Ronnie's reinstatement[29] on January 7, 2004, for which Roberts was chastised, and Roberts's decision approximately five weeks later to engage in a three-week long full-blown investigation of plaintiffs.  To the extent plaintiffs rely on this evidence to assert an independent basis for retaliation (as opposed to proof that FedEx engaged in other retaliatory conduct), it fails the fundamental requirement that they identify the protected activity in which they were engaged.

"An employee engages in protected activity by (1) opposing an

---

[29]Ronnie was reinstated after FedEx determined that its own employment policies required a period of suspension before termination.

- 49 -

employment practice made illegal by Title VII [and/or § 1981], or
(2) if he has 'made a charge, testified, assisted, or participated
in any manner in an investigation, proceeding, or hearing' under
Title VII [and/or § 1981]." *Foster v. Solvay Pharms., Inc.*, 160
Fed. Appx. 385, 388 (5th Cir. Dec. 23, 2005) (per curiam)
(unpublished opinion) (quoting *Long*, 88 F.3d at 304).  Although the
underlying practice need not be illegal, the employee must at least
reasonably believe it to be so.  *Dixon v. Moore Wallace, Inc*., 2006
WL 1949501, at *12 (N.D. Tex. July 13, 2006) (Fitzwater, J.)
(citations omitted).  A reasonable jury could not find that Ronnie
engaged in protected activity by being reinstated to employment.
Accordingly, he cannot recover for retaliation on this basis.

IX

Plaintiffs allege that FedEx is liable under Title VII and
§ 1981 because they were subjected to a racially hostile work
environment.[30]  FedEx maintains on various grounds that it cannot
be held liable for coworker harassment and that, assuming
plaintiffs can show supervisor-based harassment, FedEx has
established the affirmative defense to liability.  The court need
only consider FedEx's contentions that plaintiffs cannot show that
any harassment by coworkers or by a supervisor was severe and

---

[30]As noted *supra* at § IV(B), Katie did not exhaust her Title
VII-based hostile work environment claim.  Accordingly, Katie's
claim is limited to one brought under § 1981.  Ronnie's claim is
based on Title VII and § 1981.

pervasive.

A

To establish a prima facie case of hostile work environment based on race, plaintiffs must show that (1) they belong to a protected group, (2) they were subject to unwelcome harassment, (3) the harassment complained of was based on race, (4) the harassment complained of affected a term, condition, or privilege of employment, and (5) FedEx knew or should have known of the harassment in question and failed to take prompt remedial action. *See Ramsey v. Henderson*, 286 F.3d 265, 268 (5th Cir. 2002). Harassment is based on race if "the complained-of conduct had a racial character or purpose." *Harris-Childs v. Medco Health Solutions, Inc.*, 2005 WL 562720, at *6 (N.D. Tex. Mar. 10, 2005) (Means, J.). Moreover, plaintiffs must demonstrate a "connection between the allegedly harassing incidents and [their] protected status." *Id.* The fifth element need not be established if the harassment is allegedly committed by the victim's supervisor. *Celestine*, 266 F.3d at 353-54; *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

To meet the fourth element, plaintiffs must demonstrate that the harassment affected a term, condition, or privilege of employment. "For harassment on the basis of race to affect a term, condition, or privilege of employment . . . it must be

- 51 -

'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Ramsey*, 286 F.3d at 268 (internal quotations omitted) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Title VII prohibits "a [racially] objectionable environment [that is] both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher*, 524 U.S. at 787 (addressing sex discrimination) (citing *Harris*, 510 U.S. at 21-22). "Actionable harassment must involve 'racially discriminatory intimidation, ridicule[,] and insults.'" *Felton v. Polles*, 315 F.3d 470, 485 (5th Cir. 2002) (quoting *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000)) (applying Title VII case law to a claim brought under 42 U.S.C. § 1983); *see also Harris*, 510 U.S. at 21. "In determining whether a workplace constitutes a hostile work environment, courts must consider the following circumstances: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Ramsey*, 286 F.3d at 268 (5th Cir. 2002) (quoting *Walker*, 214 F.3d at 625). Merely offensive conduct is not actionable. *Harris*, 510 U.S. at 21.

B

Concerning coworker harassment, FedEx posits that plaintiffs cannot show that the conduct of any coworker was sufficiently severe or pervasive to support a hostile work environment claim because it was neither frequent nor severe, and none of the alleged conduct was physically threatening.  It therefore maintains that, under the totality of the circumstances, racial harassment has not been established as a matter of law.  FedEx also argues that while much of the conduct may have been boorish and offensive, the actions taken collectively are insufficient to establish that the alleged harassment was severe or pervasive enough to make plaintiffs' working environment objectively hostile or severe. FedEx also asserts that, under *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75 (1998), the relevant social context in which the behavior occurred——here, truck drivers working in a warehouse trucking environment——must be considered in determining whether harassment qualifies as severe or pervasive.  FedEx posits that reviewing the social context and applying common sense will assist the court in distinguishing between simple teasing and conduct that reasonable persons in plaintiffs' positions would find severely hostile and abusive.  It maintains that in the setting involved here, the coworkers' conduct cannot be found to be severe and pervasive.  Regarding supervisor harassment, FedEx contends that plaintiffs' reliance on Peyton's conduct is insufficient to

establish severe and pervasive harassment.

Plaintiffs respond by focusing first on a claim for supervisory harassment. They contend that Garrett's conduct affected the terms and conditions of Katie's employment because Garrett determined on a daily basis her workload and stops, and he put her freight in backwards, necessitating daily monitoring of his conduct by two managers. Plaintiffs assert that Garrett sabotaged Katie's truck and that he gave her a disproportionate amount of freight and a disproportionally large coverage area.

Plaintiffs also allege that management failed to discipline Charlotte Williams ("Williams") for throwing her equipment at Katie on a daily basis, failed to discipline Terry for intimidation and verbal attack, and failed to correct Garrett's ongoing harassment over the course of years. They aver that Peyton harassed Ronnie to such a severe degree that he broke down and cried in his manager's office and ultimately took stress leave. According to plaintiffs, FedEx management was aware of Ronnie's 2002 heart attack but failed to protect him from physical and verbal violent attacks from Garrett and Arbet shortly after he returned to work. Plaintiffs also maintain that the work environment was polluted with "jungle fever" innuendo and openly hostile comments about their interracial status.

FedEx replies, *inter alia*, that plaintiffs cannot establish that Garrett was a supervisor under applicable law, or that the

coworkers' conduct was severe and pervasive harassment, because none of the relevant circumstances——including frequency, severity, physical threats, or humiliation and whether it unreasonably interfered with work performance——favors plaintiffs.  FedEx also contends that it could not have known of the alleged harassment due to plaintiffs' failure to report it.

C

FedEx has pointed to the absence of evidence that plaintiffs were subjected to conduct that was sufficiently severe or pervasive to establish a hostile work environment.  Because FedEx will not have the burden of proof at trial on this claim, it can meet its summary judgment obligation by pointing the court to the absence of evidence to support it.  *See Celotex Corp.*, 477 U.S. at 325.  Once it does so, plaintiffs must go beyond their pleadings and designate specific facts showing there is a genuine issue for trial.  *See id.* at 324.  An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  Summary judgment is mandatory if plaintiffs fail to meet this burden.  *Little,* 37 F.3d at 1076.

In their response brief, plaintiffs rely on some evidence of harassment based on race——that is, conduct that had a racial character or purpose——but they largely cite harassment that is race neutral, which the court discusses below.  Because it is harassment that is based on race that is relevant to plaintiffs' racially

hostile work environment claim, the court focuses on that evidence.

According to the evidence on which plaintiffs rely, during a two-year period, Garrett said in Katie's presence "probably . . . 10 or 11 times" that "Y'all got that jungle fever going on." Ps. App. 591. Katie testified in her deposition that Garrett would "swing that into sentences." *Id.* Ronnie testified that, after he and Katie began seeing each other, Garrett also sang the "jungle fever" song in his presence, although he did not specify how frequently or over what period of time this occurred. *Id.* at 622. Probably when coupled with other statements (for example, Garrett supposedly said that Ronnie would "never date another black woman again"), plaintiffs understood the references to "jungle fever" to be negative comments about their interracial relationship. A reasonable jury could not find, however, that the references to "jungle fever" were sufficiently severe and pervasive that they altered a term or condition of plaintiffs' employment. *See, e.g., Mosley v. Marion County, Miss.,* 111 Fed. Appx. 726, 728 (5th Cir. 2004) (per curiam) (unpublished opinion) (affirming summary judgment dismissal of hostile work environment claim based on evidence of three instances of use of racial slurs).

Plaintiffs do not point the court to summary judgment evidence that would permit a reasonable jury to infer that Garrett's remarks, which occurred over a two-year period, were so objectively offensive as to be hostile or abusive, rather than a mere offensive

utterance that is not actionable.  *See Faragher*, 524 U.S. at 788 (stating that "'[s]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" (citation omitted) (quoting *Oncale*, 523 U.S. at 82)). They rely on evidence that Garrett made references to a movie or song (according to the record, "Jungle Fever" is both), or sang a song, that plaintiffs understood to treat their interracial relationship with opprobrium.  But they have not cited evidence that would permit a reasonable jury to find that the conduct is sufficiently severe or pervasive to alter the conditions of their employment and create an abusive working environment.  The references to "jungle fever" were apparently relatively infrequent when viewed over a span of two years, were not threatening, and required that plaintiffs draw the inference that the statements and singing of the song were negative references to their interracial relationship.  *Cf. Walker v. Thompson*, 214 F.3d 615, 626 (5th Cir. 2000) (holding that evidence that appellants who adduced evidence that they "were subjected to comparisons to slaves and monkeys, derisive remarks regarding their African heritage, patently offensive remarks regarding the hair of African-Americans, and conversations in which coworker and supervisor used the word 'ni-- er,'" had created fact issue with respect to hostile work environment claim).

Moreover, even if Garrett's conduct is taken together with the other actions on which plaintiffs rely to support their claim of supervisory harassment—but for which they have presented no evidence of racial animus—they have still failed to establish a genuine issue of material fact. Most of the actions that plaintiffs cite are not racial in character or purpose and would not reasonably permit the inference that they had a racial animus. This conduct includes, *inter alia*, loading Katie's freight backwards, giving her a disproportionate amount of freight to be delivered over a larger-than-average area, and putting 2,000-pound skids on her truck facing the wrong way. These actions are race neutral and are insufficient to permit a reasonable jury to find supervisory racial harassment. *See Medco Health Solutions,* 2005 WL 562720, at *6 (holding that plaintiff failed to provide any evidence that any of alleged harassing events were based on her race or had racial character or purpose). A reasonable jury could not find, without unreasonably piling one inference on another inference, that Garrett's allegedly harassing actions were motivated by plaintiffs' interracial relationship.[31]

_____

[31]The court does not suggest that race-neutral actions are always insufficient, when coupled with evidence of racial animus, to permit the finding that harassment is race based. To take an obvious example, if a supervisor told an African-American employee that she was going to make his work life miserable because he was African-American, and she then engaged in a course of putatively race-neutral harassing conduct that apparently was intended to do just as she promised, a reasonable jury could find that the environment was racially hostile, even though race neutral, because

- 58 -

Nor have plaintiffs adduced evidence sufficient to permit a reasonable jury to conclude that the purportedly harassing conduct of Peyton, Arbet, Terry, or Williams, or management's alleged failure to discipline them for it, was somehow connected to plaintiffs' status as an interracial couple.

Although plaintiffs allege that Peyton subjected Ronnie to unwelcome harassment, they have not adduced sufficient evidence for a reasonable jury to find that Peyton did so based on Ronnie's race or his involvement in an interracial relationship.   Ronnie's subjective belief that Peyton acted on such a basis is insufficient to create a fact issue.  *See, e.g., Nichols v. Grocer*, 138 F.3d 563, 570 (5th Cir. 1998) ("[A] subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief.") (quoting *Little v. Republic Refining Co.*, 924 F.2d 93, 95 (5th Cir. 1991)).

Plaintiffs have adduced evidence that Arbet was "physically and verbally aggressive" toward Ronnie within a few days after his return from work after suffering a heart attack.[32]  But while Arbet was certainly upset with Ronnie about an incident involving Katie and about her "mouth" (i.e., her unwillingness to "shut up" about it), *see* Ps. App. 624-25, a reasonable jury could not find that

it at least had a racial purpose.

[32]In the cited deposition testimony, Ronnie states that Arbet never actually touched him during the incident, but that Bendstrup physically restrained Arbet.

Arbet's conduct was in any way related to plaintiffs' interracial relationship.   Rather, the jury could only reasonably find that Arbet was upset with Katie about the incident, that he complained to Ronnie and told him he needed to do something about it, and that his conduct was race neutral.   Absent sufficient evidence of racial animus or purpose, Ronnie's subjective belief that Arbet's actions were motivated by racial animus is insufficient to avoid summary judgment.

Moreover, other than relying on Ronnie's subjective belief, plaintiffs have failed to adduce sufficient evidence to enable a reasonable jury to find that Terry's actions in cursing at her, throwing her purse, duffle bag, and water bottle from a FedEx truck, and using an expletive to tell her to stay out of his truck, were somehow related to Katie's involvement in an interracial relationship.   The acts on which plaintiffs rely are race neutral, and they offer no evidence from which a reasonable jury could find that Terry's actions were based on plaintiffs' interracial relationship.

Plaintiffs also rely on evidence that Williams would throw and slam down on the counter the equipment that Katie had requested, Ps. App. 589, and that, probably fewer than 12 times, Williams "ma[d]e snide jokes" to a coworker, which Katie could overhear, "about white women taking the black men," *id.*   Williams's conduct at the counter is not shown to be anything but race-neutral.   And

for reasons that the court has already explained, a reasonable jury could not find that Williams's "snide jokes" to a coworker about white women taking the black men, made over the course of the time period in question, were sufficiently severe and pervasive as to alter a term or condition of Katie's employment.

Consequently, because a jury could not reasonably find that plaintiffs were subjected to severe and pervasive harassment on the basis of their interracial status, the court grants FedEx's motion for summary judgment on plaintiffs' hostile work environment claims under Title VII and § 1981.

X

FedEx moves for summary judgment dismissing plaintiffs' Texas-law claim for intentional infliction of emotional distress. Without suggesting that FedEx's arguments lack merit, the court raises *sua sponte* that the claim should be dismissed for a more fundamental deficiency.

In *Hoffmann-LaRoche Inc. v. Zeltwanger*, 144 S.W.3d 438 (Tex. 2004), the Texas Supreme Court reiterated that the tort claim of intentional infliction of emotional distress was originally recognized to be a "'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Id.* at 447. In *Hoffmann-LaRoche* the court

addressed the claims of a plaintiff who sued her former employer for sexual harassment and intentional infliction of emotional distress. *Id.* at 441-42. It held that because the gravamen of her complaint was sexual harassment, she was unable to pursue both claims unless she proved acts independent of her sexual harassment claim that supported a claim for intentional infliction of emotional distress. *See id.* at 441.

The gravamen of plaintiffs' complaint of intentional infliction of emotional distress is their claims for race discrimination, hostile work environment, and retaliation. *See* 1st Am. Compl. ¶ 3("The employment practices of [FedEx], set forth herein below, are also alleged by Plaintiffs to be in violation of Texas common law."), ¶ 199 (asserting that "[FedEx] has and continues to intentionally inflict extreme emotional distress upon Plaintiffs," but not asserting distinct basis for allegation apart from employment practices otherwise alleged). They do not rely on acts independent of these claims to hold FedEx liable.

Accordingly, the court gives plaintiffs 20 days from the date of this memorandum opinion and order to file a brief in which they state any basis on which they rely to contend that their claim for intentional infliction of emotional distress should not be dismissed on this basis. They are not required to file such a brief if they cannot demonstrate a viable ground to remove this claim from the preclusive reach of *Hoffmann-LaRoche*. And they are

not permitted to rely on allegations not contained in their first amended original complaint or on evidence not already submitted in opposition to FedEx's motion.  After considering their response brief (or their decision not to file one), the court will either dismiss the claim or invite FedEx to file a reply.

XI

FedEx moves to strike plaintiffs' declarations that are included in their first evidentiary appendix, *see* Ps. App. 432-48, 449-71, 472-84, and 768-72, and the parts of their brief that rely on this evidence, contending in very general terms they do not comply with Fed. R. Civ. P. 56(e)[33] because they are not based on personal knowledge, lack foundation, contain improper lay opinions, and constitute inadmissible hearsay.[34]  The court denies the motion.

The declarations that FedEx seeks to exclude are essentially offered as combinations of summaries of voluminous records under Fed. R. Evid. 1006 and plaintiffs' factual testimony that explains the summarized documents and sets out other evidence that, taken together, is probative of the conduct of other FedEx drivers.

---

[33]Rule 56(e) provides, in relevant part, that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein . . . ."

[34]FedEx also moves to strike portions of plaintiffs' joint declaration, Ps. App. 141-49, on the ground that they contradict plaintiffs' deposition testimony.  Because the court has not relied on this evidence in deciding FedEx's summary judgment motion, the motion to strike is denied in this respect as moot.

Plaintiffs rely on this evidence to show that other drivers drove five miles beyond their last delivery for a break, had time lapses in their records, and made deliveries during breaks.

"Rule 1006 requires (1) the underlying writings be voluminous and (2) in-court examination not be convenient." *United States v. Stephens*, 779 F.2d 232, 239 (5th Cir. 1985) (citing *United States v. Scales*, 594 F.2d 558, 562 (6th Cir. 1978)).  FedEx has not demonstrated through its very general objections that the underlying writings are not voluminous.  Plaintiffs' testimony about the documents——at least insofar as the court has relied on it——is limited to their factual explanations of what the documents mean (e.g., how to read a time card and delivery record), what conduct they reflect, and their factual testimony about other facts, and it is not inadmissible expert opinion evidence.  The records that are summarized appear to be FedEx business records that fall within an exception to the hearsay rule.  *See* Fed. R. Evid. 803(6).  And because FedEx does not object more specifically, the court need not address whether other evidence on which it has relied in denying summary judgment is inadmissible hearsay.  Finally, assuming *arguendo* that there are deficiencies in the evidence on which the court has relied, "the papers of a party opposing summary judgment are usually held to a less exacting standard than those of the moving party." *Lodge Hall Music, Inc.*

*v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1987).[35]

                    *     *     *

For the reasons explained, the court grants FedEx's November 29, 2005 motion for summary judgment to the extent that it dismisses all of plaintiffs' claims except the following: (1) their Title VII- and § 1981-based discriminatory termination claims; (2) Katie's § 1981-based, and Ronnie's Title VII- and § 1981-based, retaliation claims based on (a) their terminations and (b) the alleged retaliatory actions taken by Peyton against Ronnie; and (3) Katie's § 1981-based discriminatory failure to promote claim based on the alleged denial of promotion in 2002.

The court raises *sua sponte* that FedEx is entitled to summary judgment dismissing plaintiffs' § 1981-based discriminatory failure to promote claims based on denials of promotions in 2001 and their claims for intentional infliction of emotional distress. Plaintiffs are given 20 days from the date of this memorandum opinion and order to file a brief in which they state any basis on which they rely to contend that these claims should not be

---

[35]In denying FedEx's motion to strike, the court has not evaluated whether the documents in question would, if offered at trial, be more properly considered pedagogical devices that "are not themselves evidence, and, absent the consent of all parties, . . . should not be sent to the [jury room] with the other exhibits." *Pierce v. Ramsey Winch Co.*, 753 F.2d 416, 431 (5th Cir. 1985) (citation omitted). FedEx does not object to the evidence on this basis, and the court has no reason to address a trial issue in the context of this summary judgment motion.

dismissed.

To the extent the magistrate judge's July 20, 2006 findings and recommendation are consistent with today's ruling, they are adopted; otherwise, the court declines to adopt them. *See supra* note 7.

**SO ORDERED.**

January 9, 2007.


_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE